THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS REMINGTON,

    Plaintiff,

v.

SUPERINTENDENT JOHN
MYRICK, et al.,

    Defendants.

No. 2:16-cv-01993-PK

**OPINION AND ORDER**

**PAPAK, Magistrate Judge:**

Pro se plaintiff Nicholas Remington brings this civil rights action under 42 U.S.C. §1983 against prison officials at the Two Rivers Correctional Institution (TRCI), including Superintendent John Myrick, Lt. Cam A. Bauer, Cap't David Pedro, Larry P. Lytle, OIC, and C.O. Lavelle Braun. Plaintiff alleges that while he was in custody at TRCI, he was placed in the Disciplinary Segregation Unit (DSU) for six days, violating his rights to procedural due process under the Fourteenth Amendment. Plaintiff also alleges that in DSU, lights were left on constantly, and excessive noise from other inmates and from loud faucets made sleeping difficult, violating his rights to be free from cruel and unusual punishment under the Eighth Amendment.

Page -1- OPINION AND ORDER

Defendants move to dismiss for failure to state a claim. Plaintiff moves to file an amended complaint. For the following reasons, I grant Plaintiff's motion to file an amended complaint and Defendants' motion to dismiss, and dismiss this action with prejudice.

## BACKGROUND

The following background is from Plaintiff's proposed First Amended Civil Rights Complaint (Am. Compl.).[1] Plaintiff was housed in the Administrative Housing Unit at TRCI on May 25, 2016, when a corrections officer told him that an inmate named Daniel Garges[2] was scheduled to be placed in the unit that afternoon. The officer told Plaintiff that TRCI staff were aware of a 2008 "conflict order" that the Oregon Department of Corrections (ODOC) had issued for Plaintiff and Garges. The officer showed Plaintiff a photo of Garges, but Plaintiff did not remember him or what Plaintiff describes as the "minor verbal incident" that gave rise to the 2008 conflict order. Am. Compl. ¶¶ 14-15. That afternoon in a common area, Garges and Plaintiff talked amicably. Plaintiff describes Garges as "empathetic." Am. Compl. ¶ 19.

The next day, Plaintiff and Garges were moved to the Disciplinary Segregation Unit (DSU) without justification and in violation of ODOC rules. Am. Compl. ¶¶ 20-23. The ODOC document requesting the administrative hold for Plaintiff stated that Plaintiff and Garges "have an institution separation that expired after their release from prison. This conflict is ongoing. Both Inmates will be placed in . . . Segregation until a solution can be determined." Compl., Ex. 1, at 1, ECF No. 2-1.

---

[1] Defendants state that their arguments for dismissal apply equally to Plaintiff's initial complaint, ECF No. 2, and to Plaintiff's proposed first amended complaint, ECF No. 15. Defs.' Reply 1 n.1, ECF No. 29. I agree with Defendants that there is no substantive difference between the two complaints.

[2] Sometimes spelled "Garages" by Plaintiff.

Page -2- OPINION AND ORDER

Plaintiff alleges that during his six days in DSU, he was subjected to "24 hour in cell illumination uncontrollable by Plaintiff that was sufficient to [interfere] with Plaintiff's sleeping patterns." Am. Compl. ¶ 25. He alleges that he also experienced "[e]xtreme noise levels at all hours" from inmates "yelling from cell to cell, tier to tier, and section to section," and from leaky faucets that made a "loud sucking noise sufficient to wake anyone up from a sound sleep without notice." Am. Comp. ¶ 25.

Plaintiff alleges that he has exhausted his administrative remedies. Plaintiff submits as exhibits his initial grievance, ODOC's responses to his grievance, and his appeals of the responses. Am. Compl., Ex. 1. Plaintiff's grievance complained that his placement in DSU violated ODOC rules, but did not mention conditions of confinement such as lighting or noise.

## LEGAL STANDARDS

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted). The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

The court should construe the pleadings of a pro se litigant more leniently than those drafted by a lawyer. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). "'Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.'"

*Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)).

## DISCUSSION

### I. Plaintiff's Eighth Amendment Claims

Plaintiff asserts that conditions in DSU violated his Eighth Amendment rights. Defendants move to dismiss Plaintiff's Eighth Amendment claim, arguing that he failed to exhaust administrative remedies for this claim. Plaintiff responds that ODOC rules would have prohibited him from filing a second grievance about conditions at DSU in addition to his grievance about the alleged due process violations.

#### A. The Prison Litigation Reform Act's Exhaustion Requirement

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires that prisoners exhaust "such administrative remedies as are available" before bringing an action challenging prison conditions. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016). "Requiring exhaustion provides prison officials a 'fair opportunity to correct their own errors' and creates an administrative record for grievances that eventually become the subject of federal court complaints." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)). The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). An inmate must complete any prison administrative process that could address his complaint and provide some relief, even if the grievance process does not permit the relief the inmate seeks, such as money damages. *Id.* at 524. Because Congress created the PLRA's exhaustion

requirement, courts may not create exceptions to it. *See Ross*, 136 S. Ct. at 1857-58 (rejecting "special circumstances" exception to exhaustion requirement).

Failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). "Once the defendant has carried that burden, the prisoner has the burden . . . to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172. "However, . . . the ultimate burden of proof remains with the defendant." *Id.*

### B. Applying the Exhaustion Requirement

Here, Defendants have met their initial burden of showing that Plaintiff failed to exhaust administrative remedies as to conditions in DSU. Plaintiff contends that he should be excused from exhausting administrative remedies because he has shown that the administrative remedies were "effectively unavailable to him." *Id.*

Construing the word "available" as used in the PLRA, the Supreme Court has explained that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An inmate may show that an administrative remedy, "although officially on the books," is not available if (1) "it operates as a simple dead end," with officers "unable or consistently unwilling to provide relief"; or (2) the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) the prison administrators, through "machination, misrepresentation, or intimidation," "thwart inmates from taking advantage of a grievance process." *Id.* at 1859-60. "Under the PLRA,

Page -5- OPINION AND ORDER

futility does not excuse a failure to exhaust; there is no futility exception to the PLRA exhaustion requirement." *McClure v. ODOC*, No. 02-cv-1011-AS, 2005 WL 425469, at *7 (D. Or. Feb. 23, 2005); *Booth*, 532 U.S. at 741 n.6 ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

In arguing that administrative remedies were not available to him, Plaintiff contends that a grievance about conditions in DSU would be barred by Oregon Administrative Rule (OAR) 291-109-01403(e), which prohibits inmates from grieving "[m]isconduct reports, investigation leading to or arising from misconduct reports, or disciplinary hearings, findings and sanctions." But here ODOC placed Plaintiff in DSU for administrative, not disciplinary reasons, and the prison accepted Plaintiff's grievance challenging his placement in DSU. Plaintiff cannot show that a grievance concerning conditions in DSU would have been barred by OAR 291-109-01403(e) as concerning disciplinary proceedings.

Plaintiff also contends that he could not file a grievance challenging conditions in DSU because of OAR 291-109-0140(2), which prohibits inmates from filing more than one grievance per incident. Plaintiff does not explain why he did not mention conditions in DSU in the grievance he filed. Plaintiff does not allege that prison officials improperly rejected a grievance on DSU conditions, or prevented him from filing such a grievance. "[A]n inmate's reasonable mistake about, misunderstanding of, or disagreement with a prison's grievance procedure" does not show that the grievance procedure was unavailable. *Crum v. Beal*, No. 6:16-cv-0600-HZ, 2017 WL 1946314, at *4 (D. Or. May 8, 2017) (citing *Ross*, 136 S. Ct. at 1858). An inmate's "misinterpretation of the regulation is insufficient to prove that a regulation is so 'opaque' that, in a practical sense, it is unavailable." *Id.* at *5. Here, as in *Crum*, "There is no dispute . . . that

Page -6- OPINION AND ORDER

Plaintiff was aware of the grievance procedure and that he failed to file one." *Id.* I conclude as a matter of law that Plaintiff has failed to show exhaustion of remedies as to his Eighth Amendment claim, requiring dismissal of that claim. *See Albino*, 747 F.3d at 1169 (in "rare cases," failure to exhaust "is clear on the face of the complaint[]").

Defendants also contend that Plaintiff has failed to allege facts showing that any individual defendant was personally responsible for the alleged deprivation of his Eighth Amendment rights. I need not address this argument because of my ruling on the exhaustion of remedies.

## II. Plaintiff's Fourteenth Amendment Due Process Claim

Defendants concede that Plaintiff exhausted his administrative remedies as to his Fourteenth Amendment due process claim. Defendants contend, however, that they are entitled to qualified immunity on the due process claim.

### A. Qualified Immunity

Courts should resolve qualified immunity issues as soon as possible because immunity is intended to shield officials from the burdens of litigation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066–67 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In ruling on qualified immunity, the court asks "(1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Id.* (citing *Pearson*, 555 U.S. at 232). Qualified immunity protects "'all but the plainly

incompetent or those who knowingly violate the law.'" *Burns v. Reed*, 500 U.S. 478, 494-95 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### B. Plaintiff's Due Process Claim

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." "Due process 'is a flexible concept that varies with the particular situation.'" *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). "Due process protections extend only to deprivations of protected interests." *Id.*

Here, Defendants argue that Plaintiff has not alleged facts showing that he had a protected liberty interest in avoiding the six-day placement in DSU. An inmate has "a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In "determining whether a prison hardship is atypical and significant," "'courts look to a "condition or combination of conditions or factors [that] requires case by case, fact by fact consideration."'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.2003) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996)). In making this determination, courts are guided by the three factors named in *Sandin*: "(1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no 'major disruption in his environment'; and (3) the length of the plaintiff's sentence was not affected." *Sandin*, 515 U.S. at 486-87.

Applying the *Sandin* factors here, I conclude that Defendants have shown that the due

process right Plaintiff asserts was not clearly established. "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.2003). For example, an inmate had "no protected liberty interest" in avoiding placement in segregated housing pending a disciplinary hearing. *Resnick*, 213 F.3d at 448; *Sandin*, 515 U.S. at 487 (inmate had no liberty interest in being free from 30 days' confinement in disciplinary segregation). Plaintiff's six days in DSU, without more, would not give rise to a protected liberty interest.

However, in addition to the confinement itself, Plaintiff also alleges that constant noise and lighting in DSU made sleep difficult. In *Serrano*, the Ninth Circuit explained that an inmate in segregation may show a protected liberty interest based on an atypical, significant deprivation. In *Serrano*, the inmate was paralyzed and alleged that he was held for nearly two months in segregation, where he was denied use of the wheelchair he had used while in the general population, "could not take a proper shower," "could not use the toilet without hoisting himself up by the seat," "had to crawl into bed by his arms," "could not partake in outdoor exercise," and "was forced to drag himself around a vermin and cockroach-infested floor." *Serrano*, 345 F.3d at 1078. The Ninth Circuit determined that the inmate's allegations, if true, showed that he had been forced "to endure a situation far worse than a non-disabled prisoner sent to the SHU would have to face," so his confinement "'worked a major disruption in his environment' and ceased to mirror those conditions imposed upon inmates in administrative segregation and protective custody." *Id.* (quoting *Sandin*, 515 U.S. at 486). The Ninth Circuit concluded that "it is not [the plaintiff's] administrative segregation alone that potentially implicates a protected liberty interest," but the inmate's "disability--coupled with administrative segregation in an SHU that

Page -9- OPINION AND ORDER

was not designed for disabled persons--gives rise to a protected liberty interest." *Id.*, 345 F.3d at 1079; *see also Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir.2014) (liberty interest arose when inmate was held for 27 months in solitary confinement for 23 hours per day, with nearly no interpersonal contact and a denial of most privileges afforded to those in the general population).[3]

The Ninth Circuit noted in *Serrano* that the facts there presented a "novel situation," and the court has since emphasized that "[o]nly the most extreme change in conditions of confinement have been found to directly invoke the protections of the Due Process Clause . . . ." *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013).[4] As one district court has explained, "Showing that a deprivation is 'atypical' with respect to the hardships of ordinary prison life is difficult, because prison conditions are typically harsh." *Hernandez v. Cox*, 989 F. Supp. 2d 1062, 1069 (D. Nev. 2013).

In arguing that the law on this issue is not clearly established for qualified immunity purposes, Defendants cite two post-*Serrano* decisions. In *Barboza v. Kelsey*, No. 03-cv-3855 AHM (AJW), 2011 WL 6091079 (C.D. Cal. Mar. 18, 2011), *adopted*, 2011 WL 6090154 (C.D. Cal. Dec. 5, 2011), the plaintiff was held in administrative segregation while prison officials determined whether he was a security risk. The plaintiff was double-celled with an inmate who

---

[3] In *Brown*, the Ninth Circuit concluded that the defendants were entitled to qualified immunity. 751 F.3d at 989-90.

[4] In *Chappell*, the court held that the defendant prison officials were entitled to qualified immunity when they held an inmate on a seven-day contraband watch under conditions including 24-hour lighting, mattress deprivation, taping the inmate into two pairs of underwear and jumpsuits, placing him in a hot cell with no ventilation, chaining him to an iron bed, shackling him at his ankles and waist, and forcing him to eat like a dog. 706 F.3d at 1061.

Page -10- OPINION AND ORDER

later attacked him; "he received only a jumpsuit, tee-shirt, boxers and socks to wear in his cell on cold winter nights"; and he was held in segregation for four months. *Id.* at *11-*14. The *Barboza* court concluded that Plaintiff had not met his burden of showing a protected liberty interest because he failed to present evidence "establishing that, due to a 'novel situation' or unusual personal characteristics, his placement in administrative segregation presented an atypical and significant hardship compared to the level of hardship routinely faced by other inmates in the same setting." *Id.* at *10.

Defendants also cite *Kenner v. Vidaurri*, 2010 WL 2947573, at *3 (D. Nev. June 10, 2010), *adopted*, 2010 WL 2947513 (D. Nev. July 22, 2010), *aff'd*, 465 F. App'x 726 (9th Cir. 2012). In *Kenner*, the court determined that "neither the duration nor the degree of restraint imposed on Plaintiff in administrative segregation is significant enough to weigh in favor of finding a liberty interest" when the plaintiff alleged he was held in "solitary confinement" for 28 days without a prior hearing. The court held that the inmate had not presented evidence that the conditions he faced "were any different from those of other inmates in administrative segregation." *Id.*

In light of the legal decisions addressing whether an inmate has shown an atypical and significant hardship establishing a protected liberty interest, I conclude that Defendants are entitled to qualified immunity. Although courts evaluating a qualified immunity defense "do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 573 U.S. 731, 741 (2011). I have not found any decisions holding that an inmate had a protected liberty interest based on conditions of confinement similar in severity to those Plaintiff alleges here. Accepting Plaintiff's

allegations as true, he was confined under the same conditions as other inmates in DSU. He does not allege that he suffered from any personal characteristics that would have made conditions in DSU particularly difficult for him. He was kept in DSU for six days, a relatively brief time. I conclude that Defendants' alleged treatment of Plaintiff did not violate clearly established law.

Plaintiff argues that after Garges had been placed in DSU, there was no need for Plaintiff to be held there. Plaintiff also submits an affidavit from Michael J. Evans, a fellow inmate, who states that the prison has separated potentially hostile inmates through "in-cell status," confining inmates to their cells except to shower. Am. Compl., Ex. 2, at 1. Generally, however, prison officials have complete discretion in housing assignments for inmates. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). I conclude that regardless of whether Defendants could have used a different method to separate Plaintiff from Garges, Defendants are entitled to qualified immunity.

I conclude that allowing Plaintiff to amend his complaint again would be futile. Dismissal therefore must be with prejudice.

## CONCLUSION

For the reasons provided above, Plaintiff's Motion for Leave to Amend, ECF No. 22, is GRANTED, and Defendants' Motion to Dismiss, ECF No. 15, is GRANTED. This action is DISMISSED with prejudice.

Dated this 3rd day of August, 2017.

Honorable Paul Papak
United States Magistrate Judge